Matthew RAGER, Jr., Marjorie Rager, As Next Friend of
Joshua Rager, Deborah Rager, as Next Friend of Cory Rager,
and Yolanda Pigeon *v.* Chandra Rager TURLEY

CA 99-104                                             6 S.W.3d 113

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered December 1, 1999
[ Petition for rehearing denied January 12, 2000.* ]

---

* JENNINGS and CRABTREE, JJ., would grant.

188

*James Dunham,* for appellant Joshua Rager.

*John Van Cleef,* for appellants Matthew Rager, Jr., Marjorie Rager, Cory Rager, and Yolanda Pigeon

*Mobley Law Firm,* by: *Jeff Mobley,* and *Skelton & Steuber, P.A.,* by: *Kristin Steuber,* for appellee.

OLLY NEAL, Judge. This appeal is from the Pope County Probate Court's order authorizing a settlement of a wrongful-death action that appellee Chandra Rager Turley filed following the August 1994 death of her father, Thomas Rager, in a vehicular accident that occurred in the scope of his employment with Tyson Foods, Inc. Thomas was also survived by his minor sons, Tommy Joe (age seventeen years) and Cory (age four years); his mother, Marjorie Rager; his brothers, Matthew Rager and Eugene Rager; and a sister, Yolanda Rager Pigeon. After appellee was appointed administratrix of the estate, she brought a wrongful-death action against the other parties involved in the accident.

After mediation with the defendants in the wrongful-death action, appellee filed a petition with the probate court on January 14, 1998, for authorization to settle the wrongful-death action. On March 11, 1998, appellant Joshua Rager, who was born on February 1, 1988, filed a petition to intervene in the probate action, asserting that he is Thomas's illegitimate child and is entitled to participate in the distribution of the proceeds from any settlement of the wrongful-death action. After Joshua's mother died in 1996, Marjorie adopted Joshua. Appellee objected to Joshua's intervention on the grounds that his claim was barred by Arkansas Code Annotated section 28-9-209 (1987) and that he had not established that he was Thomas's child. Appellee asserted that Thomas had denied his paternity of Joshua and that Joshua's mother had lived with one of Thomas's brothers before Joshua was born.

The probate judge held a hearing on whether Joshua should be treated as a beneficiary and whether the wrongful-death settlement was fair but declined to hear evidence of the distribution of the settlement proceeds at that time. On August 5, 1998, the probate judge issued an order denying Joshua's motion to intervene, stating:

> [T]he intervention claim of Joshua Rager which seeks to participate in the proceeds of the wrongful death claim is barred by the operation of *Ark. Code Ann. Sec. 28-9-209(d) (1987), and its other provisions,* and *Boatman v. Dawkins, 294 Ark. 421, 743 S.W.2d 800*

*(1988)*. Therefore, since Joshua Rager filed no claim against the estate nor a paternity action against the decedent within 180 days of Thomas Howard Rager's death, he would not be entitled to share in the proceeds of this action....

(Emphasis in original.) The probate judge found that, because Joshua could not share in the wrongful-death proceeds, the $450,043 settlement was reasonable and merited approval. Without holding another hearing, he also approved the distribution of the settlement proceeds to which appellee had agreed.

■ Joshua, Marjorie, Cory, Matthew, and Yolanda have raised three points on appeal. They argue that the probate judge erred in (1) approving the wrongful-death settlement, (2) approving the payment of a fee to the administratrix from the proceeds of the wrongful-death settlement, and (3) ordering a distribution of the proceeds without first conducting an evidentiary hearing. Appellee concedes, and we agree, that the probate court erred in approving the payment of a fee to appellee from the proceeds, because a wrongful-death recovery does not become part of the assets of the deceased person's estate. *Douglas v. Holbert*, 335 Ark. 305, 983 S.W.2d 392 (1998); Ark. Code Ann. § 16-62-102(e) (Supp. 1999). Accordingly, we reverse the probate court's award of this fee to appellee.

■ Appellants contend that the probate judge should not have approved the settlement because it did not provide for Joshua and point out that the wrongful-death statute includes the decedent's "children" among the beneficiaries of such an action. Arkansas Code Annotated section 16-62-102(d) (Supp. 1999) states: "The beneficiaries of the action created in this section are the surviving spouse, children, father and mother, brothers and sisters of the deceased person, persons standing in loco parentis to the deceased person, and persons to whom the deceased stood in loco parentis." Appellants argue that, because Joshua seeks to participate in a wrongful-death settlement and not to inherit from Thomas, the probate judge should not have relied on Arkansas Code Annotated section 28-9-209(d) (1987), which sets forth certain requirements before an illegitimate child can inherit from his father's estate. Appellants contend that this statute has no application to the right of an illegitimate child to participate in the distribution of a wrongful-death settlement. Appellants also point out that the case relied

upon by the probate judge, *Boatman v. Dawkins*, 294 Ark. 421, 743 S.W.2d 800 (1988), was an appeal from a determination of heirship. There, an illegitimate child of the decedent was not permitted to share in her father's estate because she had failed to comply with section 28-9-209(d); the proceeds of a wrongful-death settlement were not involved. We agree with appellants that this inheritance statute is irrelevant in the context of the distribution of the proceeds of a wrongful-death settlement.

However, the probate judge's decision approving the settlement is not erroneous as a matter of law because Joshua was not included as a beneficiary. The probate court has the power to decide who is a beneficiary according to the wrongful-death statute. *See Standridge v. Standridge*, 304 Ark. 364, 803 S.W.2d 496 (1991). Appellants' contention that appellee bore the burden of establishing Joshua's paternity is simply incorrect; that burden remained with Joshua. In order to qualify as a beneficiary of the wrongful-death settlement, Joshua was required to prove that he is Thomas's child; this, he did not do. Therefore, Joshua's failure to satisfy this burden of proving his status as a beneficiary according to the wrongful-death statute requires us to affirm the probate judge's denial of his motion to intervene. A trial court's ruling will be affirmed on appeal if it is correct for any reason. *Alexander v. Chapman*, 299 Ark. 126, 771 S.W.2d 744 (1989).

Appellants further argue that the probate judge erred in approving the settlement because they do not wish to settle the wrongful-death action on the terms proposed by appellee. Appellants also point to appellee's admission at trial that she accepted the proposed settlement without knowing whether the products-liability aspect of the case had been thoroughly investigated. On the other hand, appellee testified that, with counsel, she engaged in discovery and mediation with the other parties to the wrongful-death action, obtained information about the economic loss caused by her father's death and about other tort jury verdicts in Pope County. She stated that she considered her father's conscious pain and suffering and that, in reaching her decision, she weighed the emotional difficulty a trial would cost the family, the fact that no one accepted blame for the accident, and the possibility of losing at trial. In our view, the probate judge did not clearly err in authorizing appellee to settle for the total amount set forth in the agree-

ment. *See In re Estate of Campbell*, 294 Ark. 619, 745 S.W.2d 596 (1988).

■ Appellants also argue that the probate judge committed error in failing to hold a hearing on the distribution of the settlement proceeds after he decided the settlement's fairness. We agree. Subsections (g) and (h) of the wrongful-death statute, Ark. Code Ann. § 16-62-102, provide that the court approving a compromise settlement shall fix the share of each beneficiary, upon the evidence, and that the probate court shall consider the best interests of all the beneficiaries. *Bell v. Estate of Bell*, 318 Ark. 483, 885 S.W.2d 877 (1994). Subsection (f) states that, if the case is tried, the sum fixed for damages shall be that which is "fair and just compensation for pecuniary injuries, including a spouse's loss of the services and companionship of a deceased spouse and mental anguish resulting from the death, to the surviving spouse and beneficiaries of the deceased person." The factors set forth in (f) also guide the probate court's determination of the apportionment of the settlement proceeds in those cases where the damages issue is not tried. In *Bell v. Estate of Bell, supra*, the probate judge decided the shares of the settlement proceeds allocable to three beneficiaries after an apportionment hearing wherein testimony was taken from three witnesses, including an economic consultant, and a pretrial report from the guardian *ad litem* for each minor beneficiary was filed with the court. On appeal, the supreme court rejected the challenge to the probate court's distribution of the settlement proceeds, noting that the probate judge had considered the compensable elements enumerated in the wrongful-death statute and the evidence presented at the hearing. The court stated:

> Clearly, an historical distinction has been built into the wrongful death legislation between the proceeding to determine the apportionment of the award and the proceeding to determine the liability and computation of damages recoverable from the tortfeasor, which distinction is preserved in the scheme of our current statute where the issue of fixing the amount of damages is dealt with in subsection 16-62-102(f) and the issue of fixing the shares of the statutory beneficiaries in that award is dealt with in subsection 16-62-102(g).

318 Ark. at 492, 885 S.W.2d at 881. *See also Douglas v. Holbert, supra; In re Estate of Campbell, supra*. Thus, we conclude that the wrongful-death statute requires a probate judge, after approval of a

settlement, to consider evidence regarding the distribution of the settlement proceeds among the beneficiaries. We therefore reverse on this point and remand for the probate judge to conduct a hearing for that purpose.

Affirmed in part; reversed and remanded in part.

BIRD, J., agrees.

ROBBINS, C.J., and ROAF, J., concur.

JENNINGS and CRABTREE, JJ., dissent.

JOHN B. ROBBINS, Chief Judge, concurring. While I concur with the majority's disposition of this appeal, I disagree with its rationale in disposing of appellants' first issue, i.e., whether the probate court erred in approving the wrongful-death settlement because it did not provide for Joshua. Joshua contended that he was a biological child of the decedent and was entitled to participate in the wrongful-death proceeding inasmuch as "children" are included as beneficiaries under the wrongful-death statute.

The majority cited *Standridge v. Standridge*, 304 Ark. 364, 803 S.W.2d 496 (1991), as authority for the proposition that the probate court has the power to decide who the beneficiaries are in a wrongful-death action, but then held that the burden was on Joshua to prove that he was the son of the decedent, and thus a beneficiary. The majority concluded that, because Joshua had failed to do so, the probate court did not err in approving the settlement without Joshua's involvement, even though the trial court did so on the mistaken basis that Ark. Code Ann. § 28-9-209(d) (1987), pertaining to heirship rights of illegitimate children, was applicable.

Although I agree that section 28-9-209(d) is inapplicable to the determination of beneficiary status in a wrongful-death proceeding, I disagree that the probate court had jurisdiction to adjudicate Joshua's paternity. While *Standridge v. Standridge, supra,* pertained to a determination of beneficiary status in a wrongful-death proceeding, it did not involve paternity. The beneficiary categories in contention there were "surviving spouse" and "persons to whom the deceased stood in loco parentis." Consequently, I submit that *Standridge* is not authority for probate court jurisdiction to determine paternity. Arkansas Code Annotated section 9-10-101(a)(1)

(Repl. 1998) provides that "chancery court shall have concurrent jurisdiction with the juvenile division of chancery court in *cases and matters relating to paternity*" (emphasis added); and Ark. Code Ann. § 16-13-304(b) (Supp. 1999) provides as follows:

> Notwithstanding the provision of the Arkansas Juvenile Code of 1989, § 9-27-301 et seq., or any other enactment which might be interpreted otherwise, the chancery court or any division of chancery court shall have *jurisdiction for all cases and matters relating to paternity*. (Emphasis added.)

Our supreme court has had occasion to compare the subject-matter jurisdiction of the probate court and the chancery court in the area of paternity determinations, *In re: Estate of F.C.*, 321 Ark. 191, 900 S.W.2d 200 (1995), and made this observation:

> The probate court has jurisdiction over the administration, settlement, and distribution of estates of decedents and the determination of heirship. *See* Ark. Code Ann. § 28-1-104(1987). Chancery court, however, has concurrent jurisdiction with the juvenile division of chancery court in cases and matters relating to paternity. Ark. Code Ann. § 9-10-101 (Repl 1993); Ark. Code Ann. § 16-13-304(b) (Repl. 1994); Ark. Const. amend. 67. In the instant case, the sole purpose of the action is to establish paternity. Consequently, the probate court was without jurisdiction to hear the matter.

*Id.* at 193, 900 S.W.2d at 201.

Consequently, in the case now before us, inasmuch as Joshua's paternity had not been adjudicated prior to his seeking to intervene in the wrongful-death proceeding, and because the probate court lacked jurisdiction to make a paternity determination, there was no error committed in dismissing Joshua's motion to intervene.

ROAF, J., joins in this opinion.

JOHN E. JENNINGS, Judge, dissenting. The primary issue on appeal is whether an illegitimate child is entitled to participate as a beneficiary in a wrongful-death proceeding. The trial court held, as a matter of law, that the claim was barred. The majority holds, correctly in my opinion, that the trial court erred in so ruling. The majority then, however, affirms the trial court's decision on the basis that the evidence is insufficient to establish that

Joshua Rager was in fact the illegitimate child of the decedent. I think the majority is wrong for several reasons.

In the first place Joshua Rager was not yet a party to this lawsuit. When the trial court denied his motion to intervene and ruled, as a matter of law, that an illegitimate child could not participate in a wrongful-death settlement, this obviated any need for proof on the issue. A proffer is unnecessary when the substance of the evidence is apparent. Rule 103, Arkansas Rules of Evidence. The law does not require a useless act. *Doup v. Almand*, 212 Ark. 687, 207 S.W.2d 601 (1948). It is not even clear that Joshua, as a nonparty whose motion to intervene had been denied, would be entitled to offer evidence.

But even if we were to require affirmative evidence that Joshua was the child of the decedent, such evidence was before the trial court. Margie Rager, the decedent's mother, testified that she adopted Joshua. She testified that the decedent told her that Joshua was his son and that Joshua had lived with her for some two years. She testified that she told Chandra Turley, a daughter of the decedent and the administratrix of his estate, that Joshua was Tommy Rager's child. Chandra Turley testified that she had been told this by her grandmother.

Although the trial court never reached the issue whether Joshua was in fact Tommy Rager's son, surely the evidence would support a finding that he was.

For the reasons stated, I respectfully dissent. I am authorized to state that Judge CRABTREE joins in this dissent.